**Michael Grinblat** (4159752)
Law Offices of Michael Grinblat
817 Broadway, Fourth Floor
New York, NY 10003
Tel:  (347) 796-0712
Fax: (212) 202-5130
Email: michael.grinblatesq@gmail.com
*Attorney for the Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### IN AND FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SEMYON GRINBLAT**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>**OFFICE SUPERSTORE EAST LLC**, **BIG B FOODS INC.**, **58-12 QUEENS BOULEVARD RETAIL CONDOMINIUM, LLC**, **JOHN DOE 1-X**, persons yet unknown, **Limited Liability Companies, Partnerships, Corporations 1-X**, entities yet unknown,<br><br>Defendants. | **COMPLAINT**<br><br><br>**CASE NO.: 19-cv-3766**<br><br><br>**JURY DEMANDED** |

### CIVIL COMPLAINT

The Plaintiff, Semyon Grinblat, as and for his complaint against the Defendants, respectfully brings before the Court the below allegations.

### STATEMENT OF THE PLAINTIFF'S CLAIMS

1.  This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA") to enjoin unlawful discrimination based on disability. The Plaintiff, SEMYON GRINBLAT, was discriminated against on the basis of disability and denied full and

1

equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of places of public accommodation owned, leased, controlled, managed, or operated, by the Defendants, OFFICE SUPERSTORE EAST LLC, BIG B FOODS INC., 58-12 QUEENS BOULEVARD RETAIL CONDOMINIUM, LLC, JOHN DOE 1-X, persons yet unknown, Limited Liability Companies, Partnerships, Corporations 1-X, entities yet unknown.

2.  The Plaintiff files this action for himself, and those similarly situated, complaining of the violations of Title III of the ADA. This action is brought under the ADA, 42 U.S.C. §12182, §12183 and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 CFR Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 CFR Part 1191, appendices B and D, 2010 ADA Standards for Accessible Design (hereinafter "2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296 and New York City Human Rights Laws [Administrative Code] §8-107.

3.  The Plaintiff seeks compensatory, statutory and punitive damages, including, but not limited to, damages for personal injuries, pain of body and mind, declaratory and injunctive reliefs, attorney's fees, expert fees and costs against the Defendants, as well as such other relief as the Court deems to be just and proper.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202 and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of the Plaintiff's rights under the ADA.

5. This Court has supplemental jurisdiction over the Plaintiff's allegations arising from the Defendants' state law violations pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district. Venue is also proper in this district, because the Defendants' property, a public accommodation, which is the subject of this action, is located in, and does business within, this judicial district.

## PARTIES

7. The Plaintiff, SEMYON GRINBLAT, is, and has been at all times material hereto, a resident of Monmouth County, New Jersey.

8. The Plaintiff is disabled and is expressly authorized under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – to bring this action.

9. The Defendants, OFFICE SUPERSTORE EAST LLC, BIG B FOODS INC., and/or 58-12 QUEENS BOULEVARD RETAIL CONDOMINIUM, LLC, own, and/or lease, and/or have control over, and/or manage, and/or maintain, and/or operate, and at all relevant times operated, the stores "Staples" and "Big B Foods" supermarket and/or the parking lot adjacent to them, which is provided for the use of the stores' customers.

3

10. The aforementioned stores, "Staples" and "Big B Foods" supermarket, and the adjacent parking lot, are located at 58-12 Queens Boulevard, Woodside, NY 11377, hereinafter referred to as the "Subject Facilities".

11. Upon information and belief, the Defendant, OFFICE SUPERSTORE EAST LLC, owns, and/or leases, and/or manages, and/or has control over, and/or operates, and at all relevant times operated, the store under the name "Staples".

12. Upon information and belief, the Defendant, BIG B FOODS INC., owns, and/or leases, and/or manages, and/or has control over, and/or operates, and at all relevant times operated, the supermarket under the name "Big B Foods".

13. Either one, or all, of the Defendants, at all relevant times, also owned, and/or leased, and/or managed, and/or had control over, and/or operated, and/or maintained the parking lot adjacent to the aforementioned stores, "Staples" and "Big B Foods", which either one, or all of them, designed, and/or constructed, and/or painted, and/or placed markings on, and/or altered, and/or modified, for the purpose of providing parking spaces for the customers of the Subject Facilities.

14. The Defendant, OFFICE SUPERSTORE EAST LLC, is an American for-profit corporation, organized under the laws of Delaware.

15. The Defendant, OFFICE SUPERSTORE EAST LLC, is licensed to conduct business activities in New York State with the New York Department of State.

16. The New York Department of State's website shows that the registered agent of the Defendant, OFFICE SUPERSTORE EAST LLC, is located at C T Corporation System, 28 Liberty St., New York, NY 10005. The same website also shows that it is also the

address, to which the New York State Department of State will mail process, if accepted on behalf of the entity.

17. The Defendant, BIG B FOODS INC., is an American for-profit corporation, organized under the laws of New York State.

18. The Defendant, BIG B FOODS INC., is licensed to conduct business activities in New York State with the New York Department of State.

19. Neither the name, nor address, of a registered agent of the Defendant, BIG B FOODS INC., are provided on the New York Department of State's website, which shows that the New York Department of State will mail process, if accepted on behalf of the entity, to the following address: Shiney Eapen, 174 Rose Ln., New Hyde Park, NY 11040.

20. Upon information and belief, the Defendant, 58-12 QUEENS BOULEVARD RETAIL CONDOMINIUM, LLC, at all relevant times was, and currently is, either an owner, landlord, lessor, lessee, or operator of the commercial real estate lot in Queens County, on which the Subject Facilities are located, and of the building, in which they operate.

21. Upon information and belief, the Defendant, 58-12 QUEENS BOULEVARD RETAIL CONDOMINIUM, LLC, is a landlord and leases its building and land, on which the parking lot of the Subject Facilities is located, to the Defendants OFFICE SUPERSTORE EAST LLC and BIG B FOODS INC.

22. The Defendant, 58-12 QUEENS BOULEVARD RETAIL CONDOMINIUM, LLC, is an American for-profit corporation organized under the laws of New York.

23. Neither the name, nor address, of a registered agent of the Defendant, 58-12 QUEENS BOULEVARD RETAIL CONDOMINIUM, LLC, are provided on the New York Department of State's website, which shows that the New York Department of State will

mail process, if accepted on behalf of the entity, to the following address: 58-12 Queens Boulevard Retail Condominium, LLC, 525 Northern Blvd., Ste. 300, Great Neck, NY 11021-5102.

24. New York State law requires each corporation to have a designated registered agent, on whom service of process may be made. Under the New York Business Corporation Law, a "designating corporation is required to deliver to the department of state a certificate of amendment or change providing for the designation by the corporation of a new address and upon its failure to file such certificate, its authority to do business in this state should be suspended." BSC §306-A(a)(4). "Upon the failure of the designating corporation to file a certificate of amendment or change providing for the designation by the corporation of the new address after the filing of a certificate of resignation for receipt of process with the secretary of state, its authority to do business in this state shall be suspended… ." BSC §306-A(b) "In any case in which a corporation suspended pursuant to this section would be subject to the personal or other jurisdiction of the courts of this state …, process against such corporation may be served upon the secretary of state as its agent pursuant to this section. Such process may issue in any court in this state having jurisdiction of the subject matter." BSC §306-A(e)(1).

25. As the Defendants, BIG B FOODS INC. and 58-12 QUEENS BOULEVARD RETAIL CONDOMINIUM, LLC, provided neither the names, nor addresses of their registered agents to the New York Department of State, their authority to do business in New York State is suspended pursuant to BSC §306-A. Nevertheless, service of process on them is effective, because the Defendants are served upon the Secretary of State. BSC §306-A(e)(2).

26. The Defendants, OFFICE SUPERSTORE EAST LLC, BIG B FOODS INC. and 58-12 QUEENS BOULEVARD RETAIL CONDOMINIUM, LLC, operate the Subject Facilities, which are stores and/or sales establishments. The Subject Facilities are public accommodations within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 CFR §36.104 Place of public accommodation (5), New York State Human Rights Law §292(9) and New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

27. Defendants JOHN DOE 1-X and Limited Liability Companies, Partnerships and Corporations 1-X are persons or entities yet unknown, but who or which might share liability as owners or tenants of the Subject Facilities. At all relevant times they might have been, and currently might be, either owners, lessors, or operators of the commercial real estate lot in Queens County, on which the Subject Facilities are located, and of the building in which they operate. Either one or several of them might be a landlord and lease its/their building and land, on which the parking lot of the Subject Facilities is located, to the Defendants, OFFICE SUPERSTORE EAST LLC, BIG B FOODS INC. and 58-12 QUEENS BOULEVARD RETAIL CONDOMINIUM, LLC.

28. The Plaintiff reserves the right to amend this Complaint to add such persons or entities as Defendants when discovered during the course of this action.

29. Either one of the Defendants, or all of them, at all relevant times, was an owner, and/or landlord, and/or lessor, and/or lessee, and/or tenant, and/or managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or painted, and/or marked, and/or maintained, and/or altered the building, and/or the stores, and/or the parking lot adjacent to them, i.e. the Subject Facilities, which are operated by the

Defendants, OFFICE SUPERSTORE EAST LLC, BIG B FOODS INC. and 58-12 QUEENS BOULEVARD RETAIL CONDOMINIUM, LLC.

30. Either one of the Defendants, or all of them together, simultaneously, or at different times, owned, and/or leased, and/or leased to, and/or designed, and/or constructed, and/or painted, and/or placed markings on, and/or operated, and/or built, and/or maintained, and/or managed, and/or altered the parking lot, adjacent to the stores "Staples" and "Big B Foods" supermarket, for the purpose of providing parking spaces for their customers. The stores and the adjacent parking lot comprise the Subject Facilities.

31. The Defendants are jointly and severally liable for the design, construction, maintenance, management, control, alteration and/or operation of the parking lot adjacent to the stores. The stores and the parking lot are the subjects of this lawsuit and comprise the Subject Facilities.

## CLASS ACTION

32. The Plaintiff brings this suit for declaratory and injunctive relief and as a class action, pursuant to F.R.C.P. 23, on behalf of all those similarly situated who, as persons who must use wheelchairs by reason of various disabilities, and who use or desire to use the services and accommodations offered to the public by the Defendants, are protected by, and are beneficiaries of, the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

33. The Plaintiff, complaining for himself, and all other similarly situated disabled individuals in the City and State of New York, hereby alleges the following:

a.  The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.  There are questions of law, or fact, common to the class, which predominate over any questions affecting only individual members;

c.  The claims or defenses of the representative party are typical of the claims, or defenses, of the class;

d.  The representative party will fairly and adequately protect the interests of the class; and

e.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

34. The claims of the Plaintiff are typical of those of the class. The class, similarly to the Plaintiff, was also not able to have access to the Subject Facilities because of the architectural barriers.

35. The Plaintiff will fairly and adequately represent and protect the interests of the members of the class, because, in accordance with Fed. R. Civ. P. 23(g), he has retained, and is represented by, an experienced counsel, who has done the work in identifying and investigating potential claims in the action, who knows the applicable law, who may commit resources to representing the class, who would represent the Plaintiff in complex class action litigation, and because the Plaintiff has no interests antagonistic to the members of the class.

36. A class action may be maintained under Fed. R. Civ. P. 23(a), which is satisfied, as prosecuting separate actions by, or against, individual class members would create a risk of adjudications with respect to them that, as a practical matter, would be dispositive of

the interests of the other members, not parties to the individual adjudications, or would substantially impair, or impede, their ability to protect their interests. That risk includes, but is not limited to, the Defendants removing the architectural barriers without either compensating members of the class, or paying them compensatory, and/or statutory, and/or punitive damages, for discrimination, discomfort, personal injuries, pain of body and mind, emotional distress, inconvenience and humiliation, which the class members have suffered as a result of the Defendants' actions, which violated the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

37. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2), because the Defendants had acted, or refused to act, on grounds that apply generally to the class, so that final injunctive relief, or corresponding declaratory relief, is appropriate respecting the class as a whole.

38. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law, or fact, common to class members, clearly predominate over any questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

39. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people who use wheelchairs in the Eastern District of New York.

40. Clarity, consistency and uniformity in law will also be preserved, as maintenance of this lawsuit as a class action will likely eliminate the possibility of inconsistent verdicts,

10

which may be issued, if plaintiffs were to initiate individual lawsuits against the Defendants.

41. References to the Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## STATUTORY SCHEME

42. On July 26, 1990, United States Congress enacted the ADA, establishing important civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges and access to places of public accommodation.

43. Congress made the following findings:

   a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;
   b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;
   c. Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting and access to public services;
   d. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and
   e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free

society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

44. Furthermore, Congress also explicitly stated that the ADA had to:

   a. Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
   b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and
   c. Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

45. Furthermore, pursuant to 42 U.S.C. §12182 and 28 CFR §36.201(a), the congressional intent was to ensure that no place of public accommodation may discriminate against an individual on the basis of such individual's disability, with regard to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

46. Congress provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if defendant has ten (10), or fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 CFR §36.508(a).

47. The 2000 United States census indicates that in the civilian non-institutionalized population more than 49.7 million people in the United States have a disability. The census also indicates that more than 1.39 million New Yorkers have a mobility disability.

48. The ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws recognize individuals with disabilities as a protected class. 42 U.S.C. §12182(a)

49. It is unlawful for a private entity, which owns, leases, leases to, or operates a place of public accommodation, to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 CFR §36.201(a) and (b)

50. Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 CFR §36, under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

51. The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a non-delegable duty to comply with the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws. 28 CFR §36.201(a) and (b)

52. The Subject Facilities affect interstate commerce within the meaning of the ADA. 42 U.S.C. §12181(7)(E) and 28 CFR §36.104 Place of public accommodation (5).

53. Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's

failure to comply with the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws. 28 CFR §36.201.

54. Discriminatory intent is not required to establish liability under the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

55. One type of disability discrimination is the failure of an owner, or an operator, of a public accommodation to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

28 CFR §36.304

56. If an individual with a disability is dissuaded from entering, or receiving services of a place of public accommodation, because of the existence of an architectural barrier, the landlord and tenant will be guilty of discrimination on the basis of disability.

57. The Defendants must remove all barriers, removal of which are readily achievable, that deny an individual with a disability the opportunity to participate in, or benefit from, services, or accommodations, on the basis of their disability. 28 CFR §36.304

58. Removal of the architectural barriers is readily achievable by the Defendants.

59. The Plaintiff is informed and believes, and therefore alleges, that the Subject Facilities has begun operations, and/or undergone substantial remodeling, repairs and/or alterations, since January 26, 1990, and/or has sufficient income to make readily achievable accessibility modifications.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### Violations of the ADA

60. The Plaintiff, who was born in 1949, is an elderly man aged beyond his 70 years. He suffers from debilitating diseases and was diagnosed with a neurological condition, which affects his walking. The Plaintiff's treating neurologist determined that he has gait dysfunction, the causes of which include peripheral neuropathy due to diabetes mellitus, chronic right basilar ganglia lacunar infarct and cerebellar ataxia. The Plaintiff's treating neurologist also determined that he has essential tremor. Furthermore, the Plaintiff has decreased vision due to glaucoma and is blind in the right eye. The Plaintiff's gait is unsteady and he falls when he walks short distances. His treating neurologist prescribed him a wheelchair and a handicapped parking placard. The Plaintiff obtained the wheelchair and uses it regularly. The New Jersey Motor Vehicle Commission issued him a disabled person parking placard together with a handicapped identification card. The handicapped placard can be used in any car, in which the Plaintiff is travelling. The Plaintiff relies on his wheelchair and parks appropriately in handicapped accessible parking spaces. He also needs appropriate and statutorily mandated space next to that car, so that he may transfer from the car to the wheelchair. The Plaintiff is disabled under the statute, which in pertinent part states that

> *Disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual… . The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

28 CFR §36.104

61. The Plaintiff's adult son visits the Plaintiff, manages his care and takes him to places the Plaintiff wants to visit, including stores, restaurants, parks, doctors and medical facilities in New Jersey, where he currently resides, and New York, where he previously resided for decades and where his son and friends still reside.

62. In September 2018, the Plaintiff came to the Defendants' Subject Facilities by car to enjoy full and equal access to, and the benefits of, all the accommodations and services offered at the Defendants' properties.

63. The Defendants operate the Subject Facilities.

64. The Defendant, OFFICE SUPERSTORE EAST LLC, operates the store "Staples", which sells office supplies, furniture and other items.

65. The Defendant, BIG B FOODS INC., operates supermarket "Big B Foods", which sells food.

66. Adjacent to the Defendants' stores "Staples" and "Big B Foods" is a parking lot, which comprises part of the Subject Facilities, as it is provided by the Defendants for their customers.

67. The Defendants own the stores and the parking lot, and/or lease, and/or operate them, and/or designed them, and/or painted them, and/or marked them, and/or exercise control over them, and/or manage them, and/or maintain them, and/or altered them since 1992.

68. The Subject Facilities are public accommodations within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 CFR §36.104 Place of public accommodation (5), New York State Human Rights Law §292(9) and New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

69. The Defendants designated, designed and constructed the parking lot for their customers.

16

70. There are 60 parking spaces in the parking lot of the Defendants' Subject Facilities.

71. Four of the 60 parking spaces in the Subject Facilities' parking lot are identified as handicapped parking spaces by hanging identification signs and blue marking lines on the pavement.

72. The Plaintiff and his son came to the Subject Facilities by car and parked in the leftmost handicapped parking space in its parking lot.

73. The Plaintiff's son removed the wheelchair from the trunk of the car and placed it on the pavement, next to the car's right rear door, where the Plaintiff was sitting.

74. The wheelchair rolled backwards and into traffic, because both the handicapped parking space and the access aisle are impermissibly steep.

75. The handicapped parking spaces are located next to the active traffic lane in the busy parking lot.

76. The Plaintiff's son then opened the right rear door of the car and assisted the Plaintiff with exiting it. The Plaintiff barely avoided falling while he was transferring to the wheelchair, because the handicapped parking space and the access aisle are very steep. The Plaintiff's son had to hold the wheelchair with the Plaintiff in place to prevent it from rolling into traffic, which proved to be difficult.

77. While sitting in the wheelchair, the Plaintiff held on to its wheels to prevent it from rolling down the slope, but it proved to be impossible. The Plaintiff tried to rotate the wheels of the wheelchair with his hands to move it, but that also proved to be impossible. As a result, the Plaintiff's son had to push the wheelchair with the Plaintiff in it.

78. The Plaintiff then rode to "Staples" in the traffic lane, while cars were entering and exiting the busy parking lot, endangering his safety and greatly frustrating him, because

17

there was no entrance to the sidewalk, located next to the store's wall, from the access aisle, in which he transferred to the wheelchair.

79. When the Plaintiff was paying at the counter at "Staples" for the items he was purchasing, he was not able to extend his feet, knees and toes, because there was no space under it.

80. When the Plaintiff was paying at the counter at "Big B Foods" for the items he was purchasing, he was not able to extend his feet, knees and toes, because there was no space under it, as it was used to display the merchandize.

81. When the Plaintiff was transferring from the wheelchair back to the car, he once again barely avoided falling on the steep surface of the handicapped parking space and access aisle.

82. The Subject Facilities' parking lot was either designed by people, who did not have the Plaintiff and his needs, and needs of others similarly situated, in mind, to accommodate him and facilitate his access to the Subject Facilities, or worse.

83. Frustrated, disappointed and humiliated, the Plaintiff left the Subject Facilities' parking lot.

84. The Subject Facilities are located not far from the Plaintiff's son's home, in Woodside, Queens. The Plaintiff enjoys visiting that vibrant neighborhood and comes there often.

85. The Defendants' Subject Facilities are conveniently located and the Plaintiff intends to visit them, purchase items offered for sale in them and enjoy their services, as soon as the architectural barriers are removed.

86. The Plaintiff had difficulties gaining access to the Subject Facilities and paying for the items, because of the unlawful architectural barriers, and therefore suffered an injury in fact.

87. Since at least September 2018, the Defendants have engaged in unlawful practices in violation of the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

88. The Plaintiff has difficulties visiting the Defendants' Subject Facilities, continues to be discriminated against due to the architectural barriers, which remain at the Subject Facilities, all in violation of the ADA, the New York State Civil Rights Laws, and the New York State and the New York City Human Rights Laws. The barriers to access the Subject Facilities have effectively denied the Plaintiff ability to visit the property and have caused him personal injuries, including, but not limited to, pain of body and mind, emotional distress, embarrassment, humiliation and frustration.

89. Because the Subject Facilities are public accommodations, the Defendants are responsible for complying with the ADA. 28 CFR §36.304.

90. The numerous architectural barriers to access the Subject Facilities have endangered the Plaintiff's safety.

91. The Defendants' Subject Facilities violate 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 CFR §36.302 and §36.304.

92. The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set

minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodations, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodations and commercial facilities, which consist of the Title III regulations at 28 CFR Part 36, subpart D, and the 2004 ADAAG at 36 CFR Part 1191, appendices B and D.

93. The Defendants are discriminating against the Plaintiff, and others similarly situated, because at their Subject Facilities they are denying him access to, as well as full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, and its parking lot, by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to, those listed below.

94. "**Identification.** Parking *space* identification signs shall include the International Symbol of *Accessibility* complying with 703.7.2.1. Signs identifying van parking *spaces* shall contain the designation "van accessible." Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." 2010 Standards §502.6.

95. There is no sign containing designation "van accessible" in the Subject Facilities' parking lot.

96. "**Van Parking Spaces.** For every six or fraction of six parking *spaces* required by 208.2 to comply with 502, at least one shall be a van parking *space* complying with 502." 2010 Standards §208.2.4.

20

97. The Defendants failed to designate a handicapped parking space for a van and no such parking space exists in the parking lot of the Subject Facilities.

98. "**Vehicle Spaces.** Car parking *spaces* shall be 96 inches (2440 mm) wide minimum and van parking *spaces* shall be 132 inches (3350 mm) wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3." 2010 Standards §502.2.

99. There are four designated handicapped parking spaces in the Subject Facilities' parking lot.

100.    There are two designated handicapped access aisles, serving the handicapped parking spaces, in the Subject Facilities' parking lot.

101.    No designated handicapped parking space at the Subject Facilities' parking lot satisfies the minimum width requirements for a van space. All the designated handicapped parking spaces are narrower than 132 inches.

102.    The leftmost designated handicapped parking space is 95 inches wide.

103.    The second from the left designated handicapped parking space is 95 inches wide.

104.    The third from the left designated handicapped parking space is 95 inches wide.

105.    "**Floor or Ground Surfaces.** Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage. Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48." 2010 Standards §Advisory 502.4.

106.    "**Location.** *Curb ramps* and the flared sides of *curb ramps* shall be located so that they do not project into vehicular traffic lanes, parking spaces, or parking access aisles." 2010 Standards §406.5.

107.    The rightmost designated handicapped access aisle has a built-up curb ramp with a slope of 10.4%, which is equivalent to 1:9.615.

108.    "**Floor or Ground Surfaces.** Parking *spaces* and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking *spaces* they serve. Changes in level are not permitted. **EXCEPTION:** Slopes not steeper than 1:48 shall be permitted." 2010 Standards §502.4.

109.    Thus, maximum permissible slopes of handicapped parking spaces and access aisles serving them must not be steeper than 2.08%. 2010 Standards §502.4.

110.    The Defendants grossly violated §502.4 of 2010 Standards.

111.    The leftmost designated handicapped parking space has a slope of 5.15%, which is equivalent to 1:19.417.

112.    The leftmost designated handicapped parking space has a cross slope of 6.55%, which is equivalent to 1:15.267.

113.    The leftmost designated handicapped access aisle has a slope of 6.4%, which is equivalent to 1:15.625.

114.    The leftmost designated handicapped access aisle has a cross slope of 3.3%, which is equivalent to 1:30.3.

115.    The second from the left designated handicapped parking space has a slope of 3.4%, which is equivalent to 1:29.4.

116.      The second from the left designated handicapped parking space has a cross slope
of 4.45%, which is equivalent to 1:22.47.

117.      The third from the left designated handicapped parking space has a slope of
2.95%, which is equivalent to 1:33.898.

118.      The third from the left designated handicapped parking space has a cross slope of
4%, which is equivalent to 1:25.

119.      The rightmost designated handicapped access aisle has a slope of 10.4%, which is
equivalent to 1:9.615.

120.      The fourth from the left designated handicapped parking space has a slope of
4.65%, which is equivalent to 1:21.5.

121.      The fourth from the left designated handicapped parking space has a cross slope
of 9%, which is equivalent to 1:11.

122.      "**Access Aisle.** Access aisles serving parking *spaces* shall comply with 502.3.
Access aisles shall adjoin an *accessible* route. Two parking *spaces* shall be permitted to
share a common access aisle." 2010 Standards §502.3.

123.      The leftmost designated handicapped access aisle does not adjoin an accessible
route. The curb prevents access to the sidewalk, located next to the store's wall, from the
access aisle.

124.      "**Width.** Access aisles serving car and van parking *spaces* shall be 60 inches
(1525 mm) wide minimum." 2010 Standards §502.3.1.

125.      The leftmost designated handicapped access aisle is 49 inches wide.

126.      "**Access Aisle.** Accessible routes must connect parking spaces to accessible
entrances. In parking facilities where the accessible route must cross vehicular traffic

lanes, marked crossings enhance pedestrian safety, particularly for people using wheelchairs and other mobility aids. Where possible, it is preferable that the accessible route not pass behind parked vehicles." 2010 Standards Advisory §502.3.

127.      In the Subject Facilities' parking lot, the accessible route passes behind parked vehicles.

128.      "**General**. Floor and ground surfaces shall be stable, firm, and slip resistant and shall comply with 302." 2010 Standards §302.1.

129.      The ground surface in the Subject Facilities' parking lot is cracked and damaged.

130.      "**Forward Approach.** A portion of the counter surface that is 30 inches (760 mm) long minimum and 36 inches (915 mm) high maximum shall be provided. Knee and toe space complying with 306 shall be provided under the counter. A clear floor or ground space complying with 305 shall be positioned for a forward approach to the counter." 2010 Standards §904.4.2.

131.      Knee and toe spaces are not provided under the counter in "Staples".

132.      Knee and toe spaces are not provided under the counter in "Big B Foods".

133.      The individual Plaintiff, and all others similarly situated, will continue to suffer discrimination and injury without the immediate relief provided by the ADA, as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' Subject Facilities in order to measure and photograph architectural barriers that are in violation of the ADA to determine all of the areas of non-compliance with the law.

134.      The Defendants have failed to remove architectural barriers to accessibility to the Subject Facilities in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

24

135.    Upon information and belief, since 1992 the Defendants have altered the areas in their Subject Facilities, which affect, or could affect, access to or usability of their place of public accommodation.

136.    The Subject Facilities have not been designed, constructed, altered, or maintained in compliance with the accessibility standards of Title III of the ADA.

137.    The Defendants have violated their statutory obligation to ensure that their policies, practices and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for the individual Plaintiff, and all others similarly situated, and also violated their obligation to remove architectural barriers in order to let disabled individuals enjoy goods and services provided by the public accommodation under their control, thus discriminating against them.

138.    To date, the architectural barriers, the removal of which was, and is, readily achievable, and other violations of the ADA, still exist at the Subject Facilities and have not been remedied, or altered, in such a way as to effectuate compliance with the provisions of the ADA.

139.    Pursuant to the ADA, 42 U.S.C. §12101, §12182 and 28 CFR §36.304, the Defendants were required to make their Subject Facilities accessible to persons with disabilities, and should have removed architectural barriers by January 26, 1992. To date, the Defendants have failed to comply with that mandate.

140.    The Defendants' failure to remove the barriers to access constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 CFR §503.

141.    It was not structurally impracticable for the Defendants to make the Subject Facilities accessible.

142.    Removal of all architectural barriers existing at the Subject Facilities was, and is, readily achievable by the Defendants.

143.    The Defendants may, should and are required to make reasonable accommodations at the Subject Facilities and their making them would be readily achievable.

144.    Accommodations to the Plaintiff, and other persons similarly situated, and removal of architectural barriers at the Subject Facilities by the Defendants, are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

145.    The Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA in connection with the Subject Facilities.

146.    The Defendants' failure to make their Subject Facilities accessible denied the Plaintiff and others, similarly situated, an equal opportunity to participate in, or to benefit from, services, or accommodations, on the basis of their disability.

147.    The effect of the practices complained of has been to deprive the Plaintiff, and all other similarly situated individuals, of the full and equal enjoyment of the Subject Facilities and to otherwise adversely affect his status as a member of the public interested in accessing the places of public accommodation owned, leased, leased to, constructed, maintained, managed and/or operated by the Defendants.

148.    The Defendants' Subject Facilities are not accessible to, or readily usable by, individuals with disabilities.

149.    Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant the Plaintiff injunctive relief, including an order to alter the Subject Facilities, to make them accessible to, and useable by, the Plaintiff, and other similarly situated individuals with disabilities, to the extent required by the ADA, as well as close the Subject Facilities until the required modifications are completed.

150.    The Defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of their Subject Facilities is legally inexcusable. Allowing the Defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws, and discriminate against the Plaintiff, and other similarly situated individuals.

151.    The inexcusability of the Defendants' actions is exacerbated by the fact that over 25 years have passed since the effective date of Title III of the ADA. During that time period they operated at a profit, should have accumulated sufficient funds to make alterations and had numerous opportunities to remove the architectural barriers and end discrimination, but intentionally chose not to do so. By intentionally not removing the architectural barriers, which barred the Plaintiff's access, inconvenienced and embarrassed him, humiliated him and caused him personal injuries, including emotional distress to him, and others similarly situated, the Defendants gave a crystal-clear message

to disabled customers that their patronage is neither needed, desired, welcomed, or wanted.

## SECOND CAUSE OF ACTION

### Violations of the New York State Human Rights Laws

152.    The Plaintiff re-alleges, and incorporates, by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

153.    The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability … .

NYS Executive Law §296(2)(a)

154.    The Defendants' Subject Facilities are places of public accommodation, as defined in New York State Human Rights Law §292(9).

155.    The Defendants have further violated the New York State Human Rights Law by being in violation of the rights provided under the ADA.

156.    The Defendants are in violation of the New York State Human Rights Law by denying the Plaintiff, and others similarly situated, full and safe access to all of the benefits, accommodations and services of the Subject Facilities.

157.    The Defendants do not provide the Plaintiff, and others similarly situated, with equal opportunity to use their public accommodations.

158.    The Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

159.    As a direct and proximate result of the Defendants' unlawful discrimination, which is in violation of the Executive Law, the Plaintiff has suffered, and continues to suffer, personal injuries, which include emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety.

160.    The Defendants have not provided the Plaintiff, and others similarly situated, with evenhanded treatment in violation of New York State Human Rights Law §296.

161.    The Defendants' direct, or indirect, unequal treatment of the Plaintiff, and others similarly situated, was demonstrated when he was discriminated against.

162.    The Defendants have, because of the Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied him the accommodations, advantages, facilities, or privileges of their public accommodations.

163.    The Defendants have demonstrated that the patronage, or custom, of the Plaintiff, and other similarly situated individuals, is unwelcome, unwanted, undesirable, unacceptable and objectionable.

164.    In violation of the New York State Human Rights Laws the Defendants and their agents discriminated against the Plaintiff.

165.    As a direct and proximate result of the Defendants' unlawful discrimination, which was, and is, in violation of the New York State Human Rights laws, the Plaintiff has suffered, and continues to suffer, personal injuries, such as mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress,

embarrassment, anxiety, loss of self-esteem and self-confidence, together with emotional pain and suffering.

166.    The Plaintiff requests compensatory damages from each Defendant in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).


## THIRD CAUSE OF ACTION

### Violations of the New York State Civil Rights Laws

167.    The Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

168.    The Defendants have violated the Plaintiff's civil rights on the basis of his disability.

169.    Consequently, the Plaintiff is entitled to recover the penalty prescribed by Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from each Defendant.

170.    Pursuant to the New York Civil Rights law, §40-d, the Defendants are guilty of a class A misdemeanor.

171.    Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.


## FOURTH CAUSE OF ACTION

### Violations of the New York City Human Rights Laws

172.    The Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

173.    The New York City Human Rights Law, in relevant part, provides the below.

> It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation:
>> 1. Because of any person's actual or perceived … disability …, directly or indirectly:
>>> (a) to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation;

NYC Admin. Code §8-107(4)

174.    The Defendants have not reasonably accommodated the Plaintiff, and other disabled individuals, in violation of New York City's Administrative Code §8-102(4), (16), (17), (18), §8-107(4) and §8-107(15).

175.    In violation of the New York City Administrative Code, the Defendants have unlawfully discriminated against the Plaintiff and all others similarly situated.

176.    Reasonable accommodations and modifications are necessary to enable the Plaintiff, and all others similarly situated, the ability to enjoy non-restricted access and use of the Defendants' Subject Facilities.

177.    In violation of the New York City Administrative Code the owners, operators, lessees, proprietors, managers, agents and/or employees of the Defendants' Subject Facilities have, because of the actual, or perceived, disability of the Plaintiff directly, or indirectly, refused, withheld from, and denied him the accommodations, advantages, facilities, or privileges thereof.

178.    In violation of the New York City Administrative Code, on the basis of the Plaintiff's disability, the Defendants have demonstrated that the patronage, or custom, of the Plaintiff, and all others similarly situated, is unwelcome, objectionable and not acceptable.

179.    The Defendants are in violation of the New York City Human Rights Law by denying the Plaintiff full and safe access to all of the benefits, accommodations and services of the Subject Facilities.

180.    Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

181.    As a direct and proximate result of the Defendants' disability discrimination, in violation of the New York City Human Rights Laws, the Plaintiff has suffered, and continues to suffer, personal injuries, including mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress, embarrassment, anxiety, loss of self-esteem and self-confidence, emotional pain and suffering.

182.    The Plaintiff requests compensatory damages in the amount of $1,000 from each Defendant under the New York City Human Rights Law, NYC Admin. Code §8-125.


## ATTORNEY'S FEES AND COSTS

183.    The Plaintiff had to retain the undersigned counsel for the filing and prosecution of this action. The Plaintiff is entitled to have his reasonable attorney's fees, including litigation expenses, and costs, including expert fees, paid by the Defendants, pursuant to the ADA, 28 CFR §36.505 and New York Executive Law §297(10). Furthermore,

pursuant to the New York City Human Rights Law, the Court may award the prevailing

party reasonable attorney's fees. Under that law's definition "prevailing" includes a

Plaintiff, whose commencement of litigation has acted as a catalyst to effect policy

change on the part of the defendant. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the Court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs. For the purposes of this subdivision, the term "prevailing" includes a Plaintiff whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant, regardless of whether that change has been implemented voluntarily, as a result of a settlement or as a result of a judgment in such Plaintiff's favor. The Court shall apply the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when it chooses to factor the hourly rate into the attorney's fee award.

NYC Admin. Code §8-502(g)


## COMPENSATORY AND STATUTORY MONETARY DAMAGES

184.    The Plaintiff requests compensatory damages in the amount of $1,000 from each

Defendant under the New York State Human Rights Law, NY CLS Exec §297(9) and the

New York City Human Rights Law, NYC Admin. Code §8-125.

> In calculating compensatory damages under the NYSHRL and the NYCHRL, a Court in the Southern District of New York just a few months ago found relevant the fact that '[t]he New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage 'other than what a decent and reasonable individual would suffer when faced with such ignorant behavior.'

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429, (quoting and adapting Kreisler, 2012 WL 3961304, at *14)

185.    The Plaintiff requests statutory monetary damages in the sum of $500 from each

Defendant to compensate him for their violation of New York Civil Rights Law §40-c

and §40-d.

> New York Civil Rights Law §40-c holds that *any person*
> [emphasis added] who shall violate any of the provisions of
> New York Civil Rights Law §40-d 'shall for each and
> every violation thereof be liable to a penalty of not less
> than one hundred dollars nor more than five hundred
> dollars, to be recovered by the person aggrieved thereby in
> any Court of competent jurisdiction in the county in which
> the defendant shall reside. …   [T]his Court has the
> authority to order Defendant to pay Plaintiff the $500 in
> statutory damages contemplated by the New York Civil
> Rights Law for the disability discrimination Plaintiff has
> suffered… .

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429

186.    The reason the Plaintiff requests $500 from each Defendant, and not a lower

amount envisioned by the statutes, is due to the high number and extent of the violations,

which were alleged in detail in this complaint. Furthermore, the number of violations

may be even greater, and they may be even more extensive, than those alleged here and it

is likely that they will be revealed upon inspection of the Subject Facilities by an expert.


**PUNITIVE DAMAGES**

187.    The Plaintiff requests punitive damages from each Defendant to compensate him

for their violation of the New York City Human Rights Law.

> With respect to punitive damages, "the standard for
> determining damages under the NYCHRL is whether the
> wrongdoer has engaged in discrimination with willful or
> wanton negligence, or recklessness, or a 'conscious
> disregard of the rights of others or conduct so reckless as to

amount to such disregard.'" Chauca v. Abraham, 885 F.3d
122, 124 (2d Cir. 2018) (quoting Chauca v. Abraham, 30
N.Y.3d 325, 67 N.Y.S.3d 85, 89 N.E.3d 475, 481 (N.Y.
2017)). This standard requires "a lower degree of
culpability" than is required for punitive damages under
other statutes, as it "requires neither a showing of malice
nor awareness of the violation of a protected right." Id.
(quoting Chauca, 89 N.E.3d at 481).

Kreisler v. Humane Soc'y of N.Y., 2018 U.S. Dist. LEXIS 171147

## INJUNCTIVE RELIEF

188.     Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant the

Plaintiff injunctive relief, including an order to alter the Subject Facilities to make them

readily accessible to, and useable by, individuals with disabilities to the extent required

by the ADA, the New York State Civil Rights Law, the New York State Human Rights

Law, the New York City Human Rights Law and close the Subject Facilities until the

requisite modifications are completed.

189.     The Plaintiff requests the Court to issue a permanent injunction enjoining the

Defendants from disability discrimination.

190.     The Plaintiff requests the Court to issue a permanent injunction and order the

Defendants to alter their Subject Facilities to make them readily accessible to and usable

by individuals with disabilities. To achieve that, the Plaintiff requests the Court to adapt

relief ordered in Shariff v. Alsaydi, 2013 WL 4432218. The Plaintiff requests the Court

to order the Defendants to prepare architectural plans remedying the violations of the

2010 Standards and to provide the Plaintiff's counsel with those plans for review within

60 days of the Court's order. The Plaintiff also requests that the injunction provide him

with 30 days to file a motion seeking relief should the Defendants' proposed architectural

plans be inadequate to remedy the 2010 Standards violations specified in this complaint. The Plaintiff further requests that the injunction requires the Defendants to implement the architectural plans and remedy the violations within 60 days of either the Plaintiff's agreement, or a ruling by the Court stating that the plans are adequate.

191.    The Plaintiff requests the Court to issue a permanent injunction requiring the Defendants to make all necessary modifications to the Defendants' policies, practices and procedures, so that the Plaintiff, and other persons similarly situated, would not be subject to further unlawful discrimination.

192.    Injunctive relief is also necessary to order the Defendants to provide auxiliary aid, or service, and/or alternative methods, to allow the Plaintiff, and others similarly situated, to use the place of public accommodation in accordance with Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

## DECLARATORY RELIEF

193.    The Plaintiff is entitled to a declaratory judgment concerning the violations of the ADA, the New York State and the New York City laws committed by the Defendants specifying the rights of the Plaintiff, and other persons similarly situated, as to the removal of the architectural barriers from the Defendants' Subject Facilities by the Defendants and as to their policies, practices, procedures, facilities, goods and services.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff hereby respectfully requests judgment against the Defendants and that this Court grants the following relief:

A.    Certifies this case as a class action;

B.    Grants a permanent injunction

i.) Enjoining the Defendants, their officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

ii.) Requiring the Defendants to alter their Subject Facilities to make them readily accessible to, and usable for, individuals with disabilities;

iii.) Compelling the Defendants to make all necessary modifications to their policies, practices and procedures, so that the Plaintiff would not be subject to further discrimination;

iv.) Ordering the Defendants to provide auxiliary aids and services, as well as to modify their policies, or procedures, or provide an alternative method, so that the Plaintiff would be able to obtain the full and equal enjoyment of the Subject Facilities owned, operated, maintained, or leased, by the Defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws; and

v.) Ordering the Defendants to make the Subject Facilities readily accessible to and usable by individuals with disabilities.

C.  Enters declaratory judgment specifying the Defendants' violations of the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws and declares the rights of the Plaintiff, and other persons similarly situated, as to the Defendants' policies, procedures, facilities, goods and services offered to the public;

D.  Enters declaratory judgment specifying that the Subject Facilities owned, operated, leased, controlled, maintained and/or administered by the Defendants violate the ADA, the New York State Civil Rights Law, the New York State Human Rights Law and the New York City Human Rights Law;

E.  Enters an order requiring the Defendants to alter their Subject Facilities and amenities to make them accessible to, and usable by, individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws;

F.  Holds each of the Defendants liable for $500 in statutory monetary damages for each violation and awards that sum to the Plaintiff pursuant to New York State Civil Rights Laws §40-c and §40-d;

G.  Holds each of the Defendants liable for compensatory damages in the amount of $1,000 under the New York State Human Rights Law and the New York City Human Rights Law.

H.  Holds each of the Defendants liable for punitive damages for their violation of the New York City Human Rights Law.

I.  Finds the Defendants guilty of class A misdemeanor pursuant to New York State Civil Rights Law §40-d;

J.    Retains its jurisdiction over the Defendants until their unlawful practices, acts and omissions no longer exist;

K.    Finds that the Plaintiff is a prevailing party in this litigation and awards attorney's fees, expert fees, costs and expenses, together with such other and further relief at law, or in equity, to which the Plaintiff, and other persons similarly situated, may be entitled; and

L.    Awards such other and further relief as it deems necessary, just and proper.


## JURY DEMANDED

The Plaintiff demands a trial by jury of all the issues of fact and damages.


Signed: June 27, 2019


*Michael Grinblat*
Michael Grinblat, Esq. (4159752)

Law Offices of Michael Grinblat
817 Broadway, Fourth Floor
New York, NY 10003
Tel:  (347) 796-0712
Fax: (212) 202-5130
Email: michael.grinblatesq@gmail.com
*Attorney for the Plaintiff*